Alfred GLAZE, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (CITY OF PITTSBURGH), Respondent.

James McHugh, Petitioner

v.

Workers' Compensation Appeal Board (City of Pittsburgh), Respondent.

Thomas Fouch, Petitioner

v.

Workers' Compensation Appeal Board (City of Pittsburgh), Respondent.

City of Pittsburgh and UPMC Benefit Management Services, Inc., Petitioners

v.

Workers' Compensation Appeal Board (Ungerman), Respondent.

Thomas Kuczyinski, Petitioner

v.

Workers' Compensation Appeal Board (City of Pittsburgh), Respondent.

John Trenz, Petitioner

v.

Workers' Compensation Appeal Board (City of Pittsburgh), Respondent.

Kenneth Ruckel, Petitioner

v.

Workers' Compensation Appeal Board (City of Pittsburgh), Respondent.

Theodore Belajac, Petitioner

v.

Workers' Compensation Appeal Board (City of Pittsburgh), Respondent.

John A. Marks, Petitioner

v.

Workers' Compensation Appeal Board

(City of Pittsburgh), Respondent.

John Ungerman, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

Robert Shuster, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

James Howard, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Shuster), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Fouch), Respondent.

Leroy Mobley, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

Joseph Buckley, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Glaze), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Trenz), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Howard), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Divosevic), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(McHugh), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Jarzynka), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Lennon–Spangler), Respondent.

Lucia Lennon–Spangler, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Moran), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Mobley), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Dayton), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Marks), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Kuczyinski), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Ruckel), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Belajac), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Buckley), Respondent.

City of Pittsburgh and UPMC Benefit
Management Services, Inc.,
Petitioners

v.

Workers' Compensation Appeal Board
(Campbell), Respondent.

Robert Moran, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

Michael Dayton, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

David Divosevic, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

Jeffrey Campbell, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

Joseph Jarzynka, Petitioner

v.

Workers' Compensation Appeal Board
(City of Pittsburgh), Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2011.
Decided March 1, 2012.
Reargument Denied April 27, 2012.

Daniel K. Bricmont, Sylvester A. Beozzo and Herbert B. Cohen, Pittsburgh, for petitioners.

Michael B. Dodd, Pittsburgh, for City of Pittsburgh and UPMC Benefit Management Services, Inc.

BEFORE: LEADBETTER, President Judge,[1] and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

## I. Introduction

These consolidated appeals and cross appeals consist of 38 petitions for review from orders of the Workers' Compensation

---

1. This case was assigned to the opinion writer on or before January 6, 2012, when President Judge Leadbetter completed her term as President Judge.

Appeal Board (Board) affirming, due to an evenly divided panel of eight commissioners, two sets of December 2008 orders of Workers' Compensation Judge Pamela L. Briston (WCJ) in pension benefit offset cases. The City of Pittsburgh (City) and its current third-party administrator, UPMC Benefit Services (collectively, Employer), seek review of the WCJ's December 2, 2008, orders (Initial Order) that granted petitions to review compensation benefit offsets (review offset petitions) brought by 19 retired fire fighters (Claimants) receiving pension benefits and workers' compensation benefits. The Initial Order directed Employer to begin paying Claimants' weekly workers' compensation benefits without any further reduction for a pension offset. Employer seeks review of the Initial Order.

In response to the Initial Order, Claimants sought clarification as to whether Employer should reimburse them for pension offsets previously taken. In her December 23, 2008, amended orders (Amended Order), the WCJ recognized Employer is entitled to some offset for past and future benefits, and that to require the City to reimburse Claimants for past due benefits could create a significant overpayment that Claimants may be required to reimburse. Amended Order at ¶ 3. Therefore, the WCJ further ordered, "[Employer] is not required to reimburse [C]laimants for past due benefits at this time." Id. at ¶ 4. Claimants seek review of the Amended WCJ Order.

For the reasons that follow, we reverse the Board's orders and remand with the direction that the cases be remanded to the WCJ for a definitive determination of Employer's offset rights in accord with *Department of Public Welfare v. Workers' Compensation Appeal Board (Harvey)*, 605 Pa. 636, 993 A.2d 270 (2010) and *Penn-sylvania State University/PMA Insurance Group v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225 (Pa.Cmwlth. 2006), *appeal denied*, 593 Pa. 743, 929 A.2d 1163 (2007), which hold that an employer can meet its burden of proving the extent of its contribution to a claimant's defined-benefit pension by credible actuarial evidence; it need not identify actual contributions to the claimant's pension.

We also ask that the WCJ, in making her determination, consider our recent decision in *School District of Philadelphia v. Workers' Compensation Appeal Board (Davis)*, 38 A.3d 992 (Pa.Cmwlth.2011). In *Davis*, we recognized that if an employer meets its *prima facie* burden of establishing the extent of its contribution to a claimant's pension by credible actuarial evidence, a claimant challenging the credibility of the employer's actuarial evidence must present evidence demonstrating the materiality and relevance of her challenge.

Further, as a result of our remand for a definitive determination of Employer's offset rights, we dismiss as moot Claimants' challenges to the WCJ's Amended Order denying reimbursement of offsets previously taken.

## II. Background

### A. Notice of Offset; Review Offset Petition

By the Act of June 24, 1996, P.L. 350 (Act 57), the Legislature amended Section 204(a) of the Workers' Compensation Act [2] (Act) to allow employers to claim an offset against workers' compensation benefits for pension benefits simultaneously received by an employee. Section 204(a) of the Act, 77 P.S. § 71(a), pertinently provides (with emphasis added):

---

**2.** Act of June 2, 1915, P.L. 736, *as amended*,     77 P.S. § 71.

The severance benefits paid by the employer directly liable for the payment of compensation *and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employee shall also be credited against the amount of the award....*

In 2005 and 2006, Employer, pursuant to Section 204(a), filed benefit offset notices against Claimants, who were receiving workers' compensation indemnity benefits and pension benefits. Thirty days after issuing the notices, Employer reduced the workers' compensation benefits of each Claimant based upon its calculation of its funding of his or her pension. In response, Claimants each filed review offset petitions challenging Employer's offset calculations. Eventually, the 19 cases at issue here were consolidated before the WCJ.

### B. Burden of Proof

■ In a review offset proceeding, the employer claiming a pension benefit offset bears the burden of proving its entitlement to a credit. *City of Phila. v. Workers' Comp. Appeal Bd. (Andrews)*, 948 A.2d 221 (Pa.Cmwlth.2008). The employer bears the burden of proving the extent to which it funded the pension plan at issue. *Id.* As noted above, an employer in an offset review proceeding is entitled to present actuarial evidence to establish the extent it funded a claimant's defined-benefit pension plan. *Harvey; Andrews; Hensal.*

### C. Employer's Evidence

#### 1. Employer's Expert

Before the WCJ, Employer presented actuarial testimony from Milton Dean Ross (Employer's Expert), a senior consultant with Mockenhaupt Benefits Group, Employer's actuary since 1993. Employer's Expert testified at four hearings.

Employer's Expert explained Employer's Fireman's Relief and Pension Fund (Fire Fighters Fund) is a defined-benefit pension plan. In order to calculate Employer's offset using an actuarial formula, Employer's Expert determined Claimants' monthly benefits attributable to their contributions, which includes investment income from their contributions. This amount is then subtracted from the total monthly benefits Claimants receive, which leaves a balance of monthly pension benefit payments attributable to combined contributions from Employer and the Commonwealth (State). The investment returns on Employer's and the State's respective contributions are determined. Calculations are then performed to determine a ratio of non-employee contributions coming from Employer versus contributions coming from the State pursuant to the Municipal Pension Plan Funding Standard and Recovery Act[3] (Act 205). That ratio is then applied to the non-employee contributions to determine the amount of Claimants' monthly pension benefits funded by Employer.

Here, in order to promote the ease of understanding of the pension concepts involved, Claimants agreed the offset calculations for Alfred Glaze (Claimant Glaze), and later in the litigation for Theodore Belajac (Claimant Belajac), were representative of all Claimants' calculations. Employer hired Claimant Glaze in April 1979. He retired on a disability pension in 2005. Employer hired Claimant Belajac in 1973. Claimant Belajac retired on a disability pension in 2003. Employer filed offset notices against Claimants Glaze and Belajac in 2005.

---

**3.** Act of December 18, 1984, P.L. 1005, 53 P.S. §§ 895.101–895.803.

## 2. Investment Return on Claimants' Contributions

Employer's Expert explained that prior to 1985, investment return on an employee's contribution was calculated using the average six-month U.S. Treasury (T-bill) rates. Prior to Act 205, the Fire Fighters Fund operated as a *pay as you go* plan. The money went out as fast as it came in. As a result, the Fund had only a small cash investment. Therefore, Employer's Expert opined, the six-month T-bill rates were appropriate.

Beginning in 1985, and continuing through 2002, investment return on the employees' contributions was calculated based on the actual earnings from the Fund.

For the years 2003 through 2005, Employer's Expert used an estimate of a 9% return because he did not yet have enough data to calculate the actual return rates.

## 3. Employer and State Contributions

Employer's Expert also explained how Employer's contributions are separated from the State's contribution. State contributions under Act 205 began in 1984 at a relatively low figure. They increased until 1989, and then began to drop again. The State contribution changes from year to year.

Although Employer's Expert had no record of State contributions before 1987, he estimated Employer's share at approximately 43.8225% of the combined Employer/State contribution. He also stated he could not determine how much Employer contributed to any individual Claimant's pension.

At the February 2007 hearing, Employer's Expert further explained how Act 205 operates. Under Act 205, an annual minimum municipal obligation (MMO) is determined. Also, to obtain additional State aid under an available Act 205 emergency recovery program, Employer's police, fire and municipal pension plans are merged into a Comprehensive Trust Fund.

Employer's Expert further testified that in 1998, Employer issued pension obligation bonds and deposited $77,000,000 in the Fire Fighters Fund. Employer included its debt service and interest payments as part of its contribution.

Also at the February 2007 hearing, Employer's Expert submitted a second revised calculation based on additional information received from Employer's Assistant Director of Finance, Mary Lou Johnston (Assistant Finance Director).

Employer's Expert also submitted a form from the State's Department of Auditor General indicating the amount of State aid to Employer. On cross-examination, Employer's Expert testified that the amount of State aid listed in Employer's Certified Annual Financial Reports (CAFRs) differed from the State aid listed in the Auditor General's reports. For example, Employer's 1981 CAFR had a figure of $1.641 million, while the Auditor General had a figure of $1.729 million. When the CAFR totals did not match the Auditor General's reports, Employer's Expert admitted he used the lower CAFR figure.

## D. Claimants' Evidence

### 1. Claimants' Expert

At the November 2007 hearing, Claimants presented expert testimony of Thomas D. Hudak (Claimants' Expert), a licensed certified public accountant, a former investment banker and a former benefits plan auditor. He currently works in forensic accounting/litigation support. At Claimants' request, he reviewed Employer's offset calculation for Claimant Belajac.

Claimants' Expert looked at Employer's Expert's model for calculation of Employer's offsets. He opined that the model was reasonable, but he criticized the data Employer's Expert put into the model as being insufficient to establish either an accurate calculation or estimation of Employer's contribution to Claimant Belajac's pension.

## 2. Investment Return on Claimants' Contributions

Claimants' Expert opined that Employer's Expert investment income calculations for Claimants' contributions prior to 1992 were unreasonably low. Claimants' Expert opined that the use of T-bill rates for the period prior to 1985 underestimated the growth of Claimants' share of the pension contributions. He further explained that actual data would be the best information from which to calculate the actual investment income. If unavailable, a blended combination of equities and bonds could be used. Looking back to 1973 in Claimant Belajac's case, the market's positive years outweighed its negative years. Claimants' Expert opined that the use of the low-yielding T-bill rates would have a compounding adverse effect on income on Claimant Belajac's contributions.

Claimants' Expert explained that Employer's Expert used a different investment return calculation for the years 1985 through 1991. For those years, he no longer used the T-bill rates. From 1985 through 1988, Employer's Expert used a 8.9% rate of return. It is unlikely, Claimants' Expert testified, that investments would return the same rate three years in a row. He further opined Employer could have obtained the actual data for 1985 through 1988.

In addition, Claimants' Expert testified the Dow Jones Industrial Index would have yielded higher rates (15.5%) for investment in equities. He opined that if even half of the investments were in equities rather than bonds, significant investment income would not be captured by the 8.9% rate.

Further, Claimants' Expert explained, from 1989 through 1991, Employer's Expert switched methodologies and used rates ranging from 3.6% to 19.6%.

However, Claimants' Expert opined, Employer's Expert used the actual data from 1992 through 2003. He found this to be reasonable.

## 3. Employer v. State Contributions

Claimants' Expert further opined that Employer's Expert used a variety of sources to calculate the State's contribution. From 1976 through 1983, Employer's Expert used the Fire Fighters Fund financial statements. Claimants' Expert found this reasonable.

After 1983, Employer's Expert used Employer's CAFRs and the Fire Fighters Fund statements and applied a formula using an aggregate amount for the years 1983 through 1985 to obtain a *forced number* for the years 1982 through 1985. In the accounting world, Claimants' Expert opined, the use of a forced number raises a red flag that reliable data is not available. In 1984 and 1985 combined, the forced number resulted in a difference of $285,544 less than what the Fund statements indicated regarding the amount of State aid received.

Claimants' Expert further testified Employer should not include investment income from non-vested employees as part of Employer's contribution to the Fire Fighters Fund. At the June 2006 hearing, Joseph E. King (Fund Treasurer) testified that pension contributions are returned to non-vested fire fighters who leave employment before their pensions vest. Howev-

er, any interest on those contributions remains in the Fund.

Claimants' Expert further opined Employer should not include debt service interest payments to bondholders as part of Employer's contribution to the Fire Fighters Fund. As noted, Employer issued a sizeable bond in 1998 to bolster its pension plans.

Claimants' Expert also opined the Fire Fighters Fund statements would be the best *one source* to calculate the State contribution. He did not believe Employer's calculations were accurate regarding Employer's contributions because the data was unreliable and because inconsistent sources were used.

### E. WCJ's Decision

Based on the evidence presented, the WCJ granted Claimants' review offset petitions. In so doing, the WCJ reasoned (with emphasis added), *"I am not persuaded that [Employer] provided reliable data such that [Employer's Expert] could prepare calculations to show the extent that pension benefit."* WCJ's Glaze Op., 12/02/08, F.F. No. 11. The WCJ provided the following six reasons for that finding:

a. *[Employer's Expert] agreed that he could not identify how much [Employer] contributed with regard to any specific individual's pension benefits.*

b. For the early years, [Employer] does not have records that would reflect the interest earned, particularly with respect to a claimant's contribution. An understatement of interest, particularly from the early years, would have the effect of understating the employee's contribution to the Fund. [Claimants' Expert] noted that the use of U.S. Treasury bonds is very conservative and would understate the employee's contributions to the [Fire Fighters Fund]. A different method was used to calculate investment income for the years 1985–1991, and [Claimants' Expert] noted that from 1985–1988 the identical rate of 8.9 percent was used.

c. [Employer's Expert] was required to use data from a variety of sources to prepare the calculations. Information was provided from the [CAFRs], [Auditor General] reports, [the Fire Fighters Fund], Terry and Stevens records from some years and from the William Mercer Audit reports from other years. I accept [Claimants' Expert's] opinion that the problem is not with [Employer's Expert's] calculations, but the data used from inconsistent sources to determine [Employer's] contribution.

d. I further note that [Employer's Expert] agreed that when determining the amount of pension contributions from State aid, the 'CAFR Documents' had a different number in the records from the Auditor General. In 1981, the Auditor General statement indicated a State aid contribution of $1.729 million and [Employer] had a lower figure of $1.641 million.

e. I note [Fund Treasurer's] testimony that within [Fire Fighters Fund] is investment income from firefighters who have left before vesting for a pension. While their contributions would be returned, any investment income from these contributions would remain in the Fund.

f. I further note that Act 57 amended Section 204(a) of the Act in 1996. All of these firefighters sustained injuries after 1996. Many received their pensions for a few years without offsets. [Employer] began taking the offsets generally in 2005. Some of these firefighters had three sets of calculations. This is a result of data being provided to [Employer's Expert] over a period of time.

g. For these reasons, I do not find the testimony of [Employer's Expert] to be credible.

F.F. Nos. 11a-g (emphasis added).

Therefore, the WCJ found "in this matter, [Employer] failed to accurately establish the extent of [Employer's] contribution to the [Claimants'] pension plan." F.F. No. 12 (emphasis in original). Nonetheless, the WCJ further found, "*It is clear that [Employer] is entitled to an offset; however, in these proceedings I do not find it has met its burden of proof regarding the extent to which it funded the offset.*" *Id.,* F.F. No. 13 (emphasis added).

### F. WCJ's Amended Order

Thereafter, Claimants requested clarification as to whether offsets previously taken should be reimbursed to them. In her Amended Order, the WCJ stated:

ii. *Clearly, [Employer] is entitled to some offset for past due benefits, as well as for benefits in the future.*

iii. To have [Employer] reimburse [Claimants] for past due benefits could create a significant overpayment that [Claimants] would be required to reimburse [Employer].

iv. Therefore, Employer is not required to reimburse [C]laimants for past due benefits at this time.

Amended Order, 12/23/08 (emphasis added).

### G. Board's Decision

### 1. Opinion in Support of Affirmance

Employer and Claimants appealed to the Board. An eight-member Board split evenly and thus, by operation of law, affirmed the WCJ. Commissioners Fleck, Krebs, McIntyre and Wilderman agreed to affirm. In his opinion in support of affirmance, Commissioner Fleck observed that the WCJ rejected Employer's Expert's testimony on the ground that his calculations were not based on reliable data. He noted the WCJ's credibility determinations regarding the actuarial experts are matters solely within the province of the WCJ.

Commissioner Fleck recognized that in *City of Philadelphia v. Workers' Compensation Appeal Board (Calderazzo),* 968 A.2d 841 (Pa.Cmwlth.2009) and *City of Philadelphia v. Workers' Compensation Appeal Board (Grevy),* 968 A.2d 830 (Pa. Cmwlth.2009), this Court held that in cases where the employer did contribute to the pension fund, the Board should have remanded to the WCJ for a calculation of the employer's contribution. In *Calderazzo,* this Court stated:

*Nevertheless, there is no question from the record that [the e]mployer did contribute some amount of money to the pension fund each year based on an actuarial evaluation. Under these circumstances, we believe that the Board abused its discretion by denying [the e]mployer any offset/credit.* The Board should have remanded this matter back to the WCJ for the purpose of receiving actuarial testimony regarding [the e]mployer's contributions to Pension Plan B during the years relevant to this matter and rendering a determination as to the amount of the offset to which [the e]mployer is entitled. *See [Grevy ]* (concluding that the Board acted properly in awarding [the e]mployer an offset/credit and in remanding the matter back to the WCJ to render a determination as to the extent of the offset/credit to which [the e]mployer was entitled where [the e]mployer established that it contributed some amount of money to the pension fund each year based on an actuarial evaluation, but did not establish what amounts were contributed to the pension plan of which the claimant was a member for the years in question). If the

Board's decision were allowed to stand, Employer would be required to compensate [the c]laimant twice for the same injuries, and [the c]laimant would receive a double recovery; this result is unacceptable.

*Calderazzo*, 968 A.2d at 849–50 (citation omitted, emphasis added).

However, Commissioner Fleck distinguished *Calderazzo* and *Grevy*. Further, Commissioner Fleck agreed with Claimants' contention that the WCJ erred by not requiring Employer to reimburse them for the offsets already withheld. In so doing, he stated:

> Because [Employer] failed to meet its burden of proof in this [review offset petition] to establish the extent of its funding of Claimant's pension benefits, [Employer] was not entitled to any offset against Claimant's benefits; thus [Employer] was obligated to return any amounts already withheld from Claimant's benefits as [Employer] failed to establish its entitlement to those funds.

Bd. Op. in Support of Affirmance (*Glaze* ), 05/18/10, at 9.

### 2. Opinion in Support of Remand

Conversely, Commissioners McDermott, Crawford, Frioni and Hoffman agreed that *Calderazzo* warranted a remand in the present case. In her opinion in support of remand, Commissioner McDermott stated:

> Upon review of the record and determination, we believe a remand is warranted ... for the following reasons. *We first cannot reconcile the WCJ's rejection of [Employer's] evidence with her Finding that it is 'clear' that [Employer] is entitled to an offset.* In her Amended Decision and Order, the WCJ reiterated that [Employer] is 'clearly' entitled to some offset for past due and

for future benefits. However, she denied any offset to [Employer].

> \* \* \*

> Moreover, although questions of credibility are for the fact finder[,] *the WCJ highlighted the fact that [Employer's Expert] agreed he could not identify how much [Employer] contributed to any specific individual's pension benefits. (Finding of Fact No. 11) Section 204(a) does not, however, require testimony as to the dollar amount paid by an employer or proof of actual contributions. [Hensal ].* This was therefore not an appropriate objective basis upon which to reject the actuarial evidence and upon remand, we would ask the WCJ to reconsider her evaluations of credibility.

> *In addition, a determination that [Employer] is not entitled to an offset appears patently inconsistent with the WCJ's statement in the [Amended Order] that any offsets previously taken are not reimbursable.* Claimant's contention of error in this respect consists of an unresolved question that necessitates further explanation by the factfinder, as it cannot be said to be supported by the certified record or applicable precedent.

> We would remand to direct the WCJ to render a specific and positive determination based upon reconsideration of the current competent evidence of record and, if warranted, based upon any further evidence or testimony she deemed necessary to reach a determination. We would ask that such determination be consistent with purposes of the Act, the reasoned decision requirements of the Act, and the dictates of relevant and applicable case law.

Bd. Op. in Support of Remand (*Glaze* ), 05/18/10, at 9–11 (emphasis added).

■ As a result of the evenly divided panel, the Board affirmed the WCJ's opinion. Employer and Claimants petition for review.[4]

### III. Issues

Employer presents two primary issues for review. It contends the WCJ erred in rejecting Employer's Expert's testimony on the basis that he could not identify specific amounts contributed by Employer to any specific Claimant's pension benefits. Employer asserts such a requirement is inconsistent with controlling case law including *Harvey* and *Hensal,* which recognized that an employer is not required to prove its actual contributions to a claimant's pension benefit in a defined-benefit plan. Employer also contends the WCJ, in its other reasons for rejecting Employer's Expert's testimony as to the Employer's contribution to Claimants' pension benefits, not only erred in applying a standard inconsistent with *Harvey* and *Hensal,* but also erred in relying on Claimants' Expert's speculative and incompetent testimony in rejecting Employer's Expert's credible and competent testimony.

Claimants present one issue for review. They contend the WCJ erred in permitting Employer to retain the offsets deducted during the litigation where the WCJ concluded Employer did meet its burden of proof in establishing its entitlement to the offsets.

### IV. Discussion

#### A. Contributions to Specific Claimants' Pensions

##### 1. Argument

In this argument, Employer challenges the WCJ's first reason for rejecting Em-

ployer's Expert's testimony as not credible. In Finding of Fact No. 11 a, the WCJ cited the following as a reason for finding Employer's Expert not credible:

> [Employer's Expert] agreed that he could not identify how much [Employer] contributed with regard to any specific individual's pension benefits.

WCJ's Glaze Op., F.F. No. 11 a.

Employer first asserts the Fire Fighters Fund is a defined-benefit plan similar to the SERS defined-benefit plan at issue in *Harvey* and *Hensal.* In those cases, the courts recognized that given the aggregate funding in defined-benefit plans, it is impossible to determine what amount an employer contributes to each individual employee's pension.

Therefore, Employer asserts, although Section 204(a) of the Act "requires an employer to prove the extent to which it funded the pension at issue; it does not require proof of actual contributions." *Hensal,* 911 A.2d at 232. To that end, we reasoned in *Hensal:*

> Since an employer cannot provide evidence of actual contributions for the use of an individual member of a defined benefit plan, it may meet its burden of proof, as [e]mployer attempted in this case, with expert actuarial testimony. *Employer's expert evidence here, if accepted as credible, is thus legally sufficient to establish the extent to which [e]mployer funded [c]laimant's defined benefit pension for purposes of offset.* In this regard, we discern no merit in [c]laimant's argument that [e]mployer's evidence is impermissibly speculative.... *This conclusion is*

---

4. Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Penn State Univ./PMA Ins. Grp. v. Workers' Comp. Appeal Bd. (Hensal),* 911 A.2d 225 (Pa. Cmwlth.2006).

*consistent with innumerable court decisions involving the analogous law of civil damages, which hold that damages are considered speculative only if there is uncertainty concerning the existence of damages rather than the ability to precisely calculate the amount or value of damages.*

*Id.* at 232–33 (footnote and citations omitted, emphasis added).

In *Harvey,* Employer further asserts, the Supreme Court approved our reasoning in *Hensal.* In so doing, the Supreme Court held "that actuarial assumptions and calculations may form the basis for a reasoned determination of the employer-funded component of a defined-benefit plan." *Harvey,* 605 Pa. at 655, 993 A.2d at 282.

### 2. Analysis

In *Calderazzo,* we determined the Board abused its discretion by denying the employer any offset or credit under the prior version of Section 204(a) of the Act where the record shows the employer did contribute some amount of money to the pension fund each year. Rather, we recognized the Board should have remanded the case to the WCJ for the purposes of receiving actuarial testimony regarding Employer's contributions to the pension plan. Otherwise, the claimant would receive a double recovery.

As in *Calderazzo,* the WCJ in the present case found Employer is clearly entitled to an offset. F.F. No. 13. However, the WCJ found Employer failed to accurately establish the extent to which it contributed to Claimants' pension plan. F.F. No. 12.

■ Upon review of the WCJ's first reason for rejecting Employer's actuarial calculations, we agree with Employer that the WCJ erred in rejecting Employer's Expert testimony on the basis that he could not identify how much Employer contributed to any specific individual's

pension benefits. *See* F.F. No. 11 a. The WCJ's reasoning is contrary to the Supreme Court's decision in *Harvey* and our decision in *Hensal,* which hold that an employer may rely on expert actuarial testimony to establish the extent the employer funded the claimant's defined-benefit pension.

Worse, Finding of Fact No. 11a suggests that the WCJ did not understand how defined-benefit pensions are funded. *Harvey* and *Hensal* recognized that in a defined-benefit plan, an employer *cannot* provide evidence of its actual contributions to a particular employee's pension benefit. Rather, the extent to which an employer funded a particular employee's benefit defined-benefit pension can only be determined by an actuarial formula. *Hensal.* Consequently, Employer's Expert's testimony that he could not identify how much Employer contributed to any specific individual's pension benefits does not provide an appropriate objective basis for rejecting Employer's Expert's testimony. *See Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.),* 574 Pa. 61, 828 A.2d 1043 (2003) (a WCJ must articulate some objective basis for credibility determinations).

### B. Remaining Reasons for Rejecting Employer's Actuarial Evidence

#### 1. Overview of Employer's Argument

In its second argument, Employer contends the WCJ's reasons enumerated in Findings of Fact Nos. 11b–g for rejecting Employer's Expert's testimony as not credible are based on Claimants' Expert's incompetent and speculative testimony. Employer asserts Claimants' Expert based his testimony and opinions on a misunderstanding of Employer's pension system and pure speculation. Thus, Employer urges, Claimants' Expert's testimony cannot be considered competent evidence sup-

porting the WCJ's rejection of Employer's Expert's competent actuarial calculations. See *U.S. Steel Mining Co. v. Workers' Comp. Appeal Bd. (Sullivan)*, 859 A.2d 877 (Pa.Cmwlth.2004) (WCJ's reliance upon incompetent expert evidence cannot be severed from the WCJ's credibility determination).

Employer further contends the WCJ's rationale is inconsistent with the applicable case law. In support, Employer again cites *Harvey* and *Hensal.*

### 2. Early Interest Return; Conservative T–Bill Rates; Different Methods

In Finding of Fact No. 11b, the WCJ found Claimants' Expert opined that the use of T-bill rates is very conservative and would underestimate the employees' contributions to the Fire Fighters Fund. Employer asserts Claimants' Expert did not review the financial statements from the Fund prior to Act 205, when it operated as a *pay as you go* pension plan with a minimal cash investment. In short, prior to 1985, the Fund had only a small cash investment justifying the use of the T-bill rates; it did not have the resources to invest in a blend of equities, bonds and cash that would yield a higher rate of return.

Second, Employer asserts, Claimants' Expert never understood that as a result of the enactment of Act 205, the Fire Fighters Fund changed from a *pay as you go* plan to a plan with an annual MMO. The changes brought by Act 205 resulted in different funding, different allocation of funding, different methods to determine funding amounts, different entities charged with auditing the Fund, different asset levels, different investment opportunity, different investments, and thus different *data sources.*

### 3. Data From Various Sources; Different Numbers

In Finding of Fact No. 11c, the WCJ found Employer's Expert used data from a variety of sources including Employer's CAFRs, the Auditor General's reports, the Fund's statements, and reports from two previous Fund auditors (Terry & Stephenson and William Mercer Report). The WCJ accepted Claimants' Expert's opinion that the problem is not with Employer's Expert's calculations, but the data used from inconsistent sources to determine Employer's contribution.

In Finding of Fact No. 11d, the WCJ found that in determining the State contribution, Employer's CAFR documents had a different State aid figure than the records from the Auditor General. Employer used the lower State aid figure in the CAFRs.

Again, Employer asserts, Claimants' Expert failed to understand the different funding, different allocation of funding, different methods to determine funding amounts, different entities charged with auditing the Fund, different asset levels and different investments brought about by Act 205. Moreover, the Auditor General's reports are not issued every year.

Citing *Hensal,* Employer contends, when analyzing an employer's offset calculation, consideration must be given as to how the plan operates. As a result of the funding changes brought by Act 205, Claimants' Expert's opinion that "one consistent source" is the most for determining the State contribution is impractical.

▪ Case law, Employer again stresses, does not require *actual contribution* and *actual investment return* data. *Hensal.* Further, when several sources are utilized, it is likely that in some years, some information will not precisely match. However, the proper inquiry is not whether some

information may differ, but whether the use of the information is justified and acceptable within a reasonable degree of actuarial certainty. *Id.* As to defined-benefit plans and expert testimony in general, case law does not require certainty. *See, e.g., Lach v. Fleth,* 361 Pa. 340, 64 A.2d 821 (1949) (expert opinion in claim for damages is sufficient if it affords a reasonably fair basis for calculating the plaintiff's loss; it need not conform to the standard of mathematical exactness); *Hensal* (same).

Here, Employer's Expert and Employer's Assistant Finance Director, both of whom are charged with administering the Fire Fighters Fund, explained the reasons for using the different sources. Some more reliable sources were only available in certain years, and they were utilized whenever possible. If not available, other sources were used. Again, Claimants' Expert did not understand how the Fire Fighters Fund operated under Act 205.

### 4. Forfeitures from Non–Vested Fire Fighters; Debt Service

In Finding of Fact No. 11e, the WCJ noted that Fund Treasurer credibly testified that investment income from non-vested fire fighters who left before their pensions vested remained in the Fund. This could further reduce Employer's contribution.

However, Employer asserts this is not a valid ground for an adverse credibility determination. Employer's Expert opined that Employer's actuarial assessment considered the possibility of other nominal sources of funding including fines, donations and forfeitures from non-vested fire fighters. Further, Claimants' Expert did not calculate this amount. Therefore, it would be pure speculation for him to find that these nominal sources of income would significantly change Employer's calculations.

Employer further asserts Claimants' Expert erroneously testified that Employer paid its debt service payments related to its 1998 bond issue for the pensions, including interest payments to bondholders, from the Fire Fighters Fund. Although the WCJ did not cite this as a reason for rejecting Employer's Expert's offset calculations, there is no support for this suggestion in the record.

### 5. Three Different Calculations

In Finding No. 11f, the WCJ found that some Claimants had three different sets of calculations. The WCJ cited this as her final reason for rejecting Employer's Expert's opinion as not credible.

Employer asserts this finding is simply an example of form over substance and ignores how the Fund operates. Employer's Expert acknowledged that the initial offset calculations were based on estimates as the audited reports with the actual investment return were not yet available. As the litigation continued and the audits were completed, Employer recalculated the offsets. When additional information became available, Employer's Expert again recalculated the offsets.

### 6. Employer's Summary

In summary, Employer asserts it cannot be held to a standard beyond that required by *Harvey* and *Hensal* and be required to rebut factors that presumably could change the calculations. If this were the standard, it would be far easier for a claimant to assert some alternate factor or source either changes or invalidates the offered method, data and testimony.

Here, Employer presented competent testimony from individuals with specific knowledge as to how the plan is funded. Employer's Expert explained the evolution of the Fire Fighters Fund, how this evolution created data source problems, and

how the problems were rectified in the offset calculation. Employer's Expert further testified how additional data modified the offset calculations. Conversely, Employer asserts, Claimants presented an accountant who reviewed Employer's Expert's calculations and merely opined that better data must exist.

In light of *Harvey* and *Hensal,* Employer seeks a remand for a definitive determination of its offset rights. The remand must include proper instruction to the WCJ to consider the competent evidence of record and to consider how the Fire Fighters Fund truly operates in her assessment of the offset methodology and data sources utilized.

### 7. Claimants' Response

■ In response, Claimants contend the WCJ certainly had an objective basis for her credibility determinations. It is beyond cavil that the WCJ's authority over issues of credibility and evidentiary weight is unquestioned. *Universal Cyclops Steel Corp. v. Workmen's Comp. Appeal Bd. (Krawczynski),* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973). Here, Claimants assert, the WCJ's credibility findings are supported by the record.

Further, Claimants contend, Employer's arguments regarding the competency of Claimants' Expert are completely without merit. He testified regarding his qualifications as an accountant and his experience auditing benefit plans. He further testified he reviewed Employer's Expert's testimony at previous hearings and reviewed Employer's offset calculation for Claimant Belajac. Employer did not raise any competency objection when Claimants' Expert was offered as an expert.

### 8. Analysis

■ As noted in the discussion of the Employer's challenge to Finding of Fact No. 11a, the WCJ clearly erred when she assigned as a reason for rejecting Employer's Expert's testimony on the basis of Employer's inability to identify how much it contributed to any specific individual's pension benefits. *Harvey; Hensal.* This error, by itself, is so fundamental that it warrants a remand for reconsideration of the evidence.

Regardless, upon review of the WCJ's other reasons for rejecting Employer's Expert's testimony, enumerated in Findings of Fact Nos. 11b-11f, we believe there are additional grounds for requiring a remand. Chief among these is the WCJ's misunderstanding of an employer's burden of proof in a review offset proceeding once it is clear that some pension offset is warranted.

In *Hensal,* we rejected the claimant's argument that the employer's actuarial evidence was too speculative to establish the extent to which the employer funded the claimant's defined-benefit pension for purposes of an offset under Section 204(a) of the Act. We analogized to the law of civil damages and cases holding that damages are considered speculative only if there is uncertainty concerning the existence of damages rather than the ability to precisely calculate the amount of damages. *See Hensal,* 911 A.2d at 232–33.

■ In the realm of civil damages, a plaintiff is *not prevented from recovering* damages merely because they are not capable of exact ascertainment. *DeFulvio v. Holst,* 272 Pa.Super. 221, 414 A.2d 1087 (1979). Mere uncertainty of the amount of damages *will not bar recovery* where it is clear that the damages were the result of the defendant's conduct. *Pikunse v. Kopchinski,* 429 Pa.Super. 46, 631 A.2d 1049 (1993). Where the amount of damage is difficult to calculate with absolute precision, the indefiniteness *does not preclude relief* provided that the amount can be

fairly estimated from the evidence. *Carroll v. Phila. Hous. Auth.*, 168 Pa.Cmwlth. 275, 650 A.2d 1097 (1994).

Here, the WCJ found that some offset was warranted. F.F. No. 13. Given that finding, some imprecision in proof of the amount of the offset was tolerable. *Hensal.* Therefore, denying all recovery is error. *Harvey; Calderazzo.*

Our recent decision in *Davis* is also instructive. There, citing *Harvey* and *Hensal,* we reaffirmed that an employer may use an actuarial formula to meet its *prima facie* burden in a review offset petition of establishing the extent to which it contributes to a claimant's pension benefit in a defined-benefit plan.

As here, the WCJ in *Davis* found the employer's consulting actuary not credible and denied the employer's petition for a benefit offset. In *Davis,* the WCJ based her negative credibility determination on the actuary's response to questions on cross-examination regarding interest accruing on contributions to the pension fund by non-vesting employees. Upon termination of service, non-vesting employees are returned their contributions, plus four percent statutory interest. However, any earned return over four percent remained in the pension fund and is considered part of the employer's contribution. The employer's actuary testified the investment rate of return varied from year to year and that the employer's actuarial formula took the retained investment returns into consideration.

However, the WCJ focused on the employer's actuary's testimony that she did not determine the portion of the pension fund funded by the investment growth from the retained investment returns of non-vesting employees. In light of this testimony, the WCJ rejected the employer's actuary's conclusion that the employer's actuarial formula accurately established the employer's contribution for the offset. Therefore, the WCJ denied the employer's offset petition. On appeal, the Board affirmed.

In reversing, we noted that other than asking hypothetical questions on cross-examination, the claimant failed to present any material evidence that the retained investment returns affected the extent the employer contributed to the pension fund. We reasoned that absent such evidence the employer's actuarial evidence met the requirements of *Harvey* and *Hensal.* Thus, we stated:

> In this case, [the e]mployer established a prima facie case, and if [the c]laimant desired to challenge the prima facie case, [the c]laimant was required to offer her own evidence demonstrating the materiality and relevance of her assertion that retention in the Fund of investment returns of non-vesting employees impacted the extent to which [the e]mployer contributed to [the c]laimant's pension.

*Davis,* 38 A.3d at 999–1000.

Having determined in *Davis* that the employer's actuarial evidence met the requirements of *Harvey* and *Hensal,* we reversed the Board's order affirming the WCJ. We then remanded to the Board with directions to remand to the WCJ to issue an order directing the employer to take an appropriate offset based on the employer's actuarial evidence.

█ Here, in Findings of Fact Nos. 11b–11f, the WCJ cited as reasons for rejecting Employer's offset calculations Claimants' Expert's criticisms of the data and sources used by Employer's Expert in determining the extent of Employer's con-

tributions to Claimants' pension benefits. Significantly, although Claimants' Expert criticized the data and number of sources used by Employer's Expert,[5] Claimants' Expert performed no alternative offset calculations using the different data and sources he believed to be more appropriate.

Thus, Claimants' Expert did not establish the materiality of his criticism of Employer's calculation of any individual Claimant's pension offset. Consequently, in accord with *Davis*, Claimants failed to show how, if at all, the use of the data or sources Claimants' Expert found more reliable or appropriate would materially impact the extent of Employer's contributions as determined by Employer's Expert.

In addition, the WCJ did not make a finding that any of the discrepancies upon which she based her credibility determination were important, significant, or material. In Pennsylvania, fact-finders determine the credibility of witnesses. Among the instructions given to jurors to help them determine believability of witnesses is the following (with emphasis added):

> If you believe some part of the testimony of a witness to be inaccurate, consider whether that inaccuracy cast[s] doubt upon the rest of the same witness's testimony. *You should consider whether the inaccuracy is in an important matter or a minor detail.*

> You should also consider any possible explanations for the inaccuracy. Did the witness make an honest mistake or simply forget, or was there a deliberate attempt to present false testimony?

Pa. S.S.J.I. (Civ) § 4.20(i) (4th ed.2010).

Without further explanation from the WCJ, it is impossible to determine whether, and on what basis, she considered any of the discrepancies to be an important matter, as opposed to a minor detail, in the overall actuarial calculation. Thus, without further explanation as to which discrepancies are significant or fatal to Employer's Expert's actuarial calculations, this Court cannot review whether the WCJ's credibility determination is supported by appropriate, objective reasons in the record. *Davis*.

In accord with the WCJ's determination that Employer is clearly entitled to an offset and that any offsets previously taken are not reimbursable, we agree with Commissioner McDermott that a remand to the WCJ is required for a definitive determination of Employer's offset rights. Furthermore, the WCJ's determination of Employer's entitlement to an offset under Section 204(a) of the Act must be consistent with the dictates of *Harvey, Davis, Hensal* and other applicable cases. Therefore, we direct the WCJ, in light of the case law cited herein, to reconsider the current evidence and, if warranted, to take such additional evidence, which may include alternative offset calculations, as is necessary to determine Employer's entitlement to an offset.

---

**5.** An employer's contributions to a defined-benefit plan serve as a "balancing mechanism" designed to smooth away shortfalls and excesses in investment returns and benefit costs, which vary from year the year. *Harvey*, 605 Pa. at 650, 993 A.2d at 279, n. 12. "To look only at returns and employer contributions during a brief period of time ignores how pensions are administered in light of the uncertainties surrounding returns and benefit costs and ignores the fact that the employer's obligation and contributions do not end at the employee's retirement." *Id.* (quoting DAVID. B. TORREY and ANDREW E. GREENBERG, PENNSYLVANIA WORKERS' COMPENSATION: LAW AND PRACTICE § 12.89 (2008)).

### C. Claimants' Appeals

#### 1. Argument

▆ In their petitions for review, Claimants contend the WCJ, in her Amended Order, erred in permitting Employer to retain the offsets it previously deducted where the WCJ concluded Employer did meet its burden of proof in establishing its entitlement to the offsets. Claimants assert there is absolutely no reason why Employer should be allowed to continue to retain past indemnity benefits that it offset where it failed to establish the extent of the offset claimed. Where an employer fails to meet its burden of proof to establish the extent of its funding of an employee's pension, the employer is not entitled to any offset whatsoever. *Andrews; Dep't of Pub. Welfare v. Workers' Comp. Ap Bd. (King)*, 884 A.2d 343 (Pa. Cmwlth.2005).

In neither *Andrews* nor *King*, Claimants argue, did the WCJ, Board or this Court permit the employers to retain the wrongfully withheld benefits. Thus, Claimants assert, the WCJ here erred in apparently believing that Employer is entitled to another opportunity to establish the extent to which it funded their pensions. Because the WCJ rejected Employer's evidence on credibility grounds, Claimants urge they are entitled to a return of the offsets. They argue that Employer's re-litigation of a claim already fully adjudicated would be barred by the doctrine of *res judicata. Chalmers v. Workmen's Comp. Appeal Bd. (City of Phila.)*, 636 A.2d 1260 (Pa. Cmwlth. 1994).

#### 2. Analysis

▆ The present case is distinguishable from *Andrews* or *King.* In those cases, the employers did not offer *any* expert testimony indicating the extent the employer funded the claimants' pensions. Here, Employer presented expert actuarial evidence of the extent to which it funds Claimants' pensions. Moreover, given our decision to remand for a reconsideration of the evidence in light of *Harvey, Davis* and *Hensal,* we need not address the merits of Claimants' appeals. Accordingly, we dismiss Claimants' petitions for review as moot.[6]

### V. Conclusion

For the above reasons, we vacate the Board's orders affirming the WCJ's orders and remand these cases with the direction to remand these cases to the WCJ to reconsider the evidence, make additional findings of fact, and render a definitive determination of Employer's offset rights consistent with this opinion. In view of our remand for definitive determination of Employer's offset rights, we dismiss Claimants' petitions for review as moot.

#### *ORDER*

**AND NOW,** this 1st day of March, 2012, the orders of the Workers' Compensation Appeal Board, to the extent they affirmed the December 2, 2008, orders of the Workers' Compensation Judge, are **RE-VERSED** and these cases are **REMAND-ED** for further proceedings consistent with our instructions in the foregoing opinion. Petitioner–Claimants' petitions for review from the Board's orders are **DISMISSED** as **MOOT.** Jurisdiction is relinquished.

6. Nevertheless, the WCJ's decision not to order reimbursement illustrates another inconsistency in the WCJ's orders. Her refusal to allow an offset in the Initial Order is inconsistent with her refusal to allow reimbursement in the Amended Order. As Commissioner McDermott observed, if this inconsistency persists after remand, it will require further explanation from the WCJ.

CONCURRING AND DISSENTING OPINION by Judge McCULLOUGH.

While I concur in the majority's decision that the WCJ's orders in these cases should be vacated and remanded to the WCJ, I do so only because of the WCJ's error of law in concluding that Section 204(a) required testimony as to how much the Employer contributed to any specific individual's pension benefits. The *Hensal* case clearly holds that such testimony is not required in the context of a defined benefit plan, and inasmuch as the Supreme Court denied the appeal of this Court's decision in *Hensal,* we are obliged by the doctrine of *stares decisis* to follow it. I believe that upon remand, the WCJ should reconsider her findings based upon the proper application of *Hensal* only. I respectfully dissent to the extent that the majority's decision goes beyond this. I do not believe the Employer is entitled to a redo of the proceedings before the WCJ.

I must also respectfully disagree with the premise of the following statement made by the majority:

"Significantly, although Claimants' expert criticized the data and number of sources used by Employer's Expert,[ ] Claimants' Expert performed no alternative offset calculations using the different data sources he believed to be more appropriate." *Glaze v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 41 A.3d 190, 208 (Pa.Cmwlth.2012) (footnote omitted).

I believe the foregoing statement in effect places the onus on Claimants' Expert to do the work of Employer's Expert. While *Hensal* permits actuarial evidence to establish an employer's right of offset, that evidence must nonetheless be credible. If the WCJ finds that the actuarial evidence submitted by Employer's Expert is not credible based upon the critique thereof by Claimants' Expert, that is sufficient for a

determination to deny offset. Claimants have no affirmative obligation to provide evidence as to what the offset should be as the aforesaid statement by the majority suggests.

Lastly, given the inconsistency between the Initial Order and the Amended Order, I must dissent to the conclusion that Claimants' petitions for review are moot. I am concerned that merely mooting these petitions for review, without more, invites a repeat of the same error made by the WCJ in her refusal to allow reimbursement in the Amended Order. The majority concedes the possibility of such in footnote 6 to its opinion that "if this inconsistency persists after remand, we will require further explanation from the WCJ."

Given the inconsistencies that already exist between the Initial Order and the Amended Order, further direction from this Court should be given to the WCJ as to the parameters of the remanded proceedings that should be conducted as needed. Therefore, in addition to directing that the WCJ render a definitive determination of Employer's offset rights, the WCJ should be instructed that if, on remand, she determines that Employer has failed to establish the extent of its claimed offset that she must order reimbursement by Employer to the Claimants of the amounts it has already offset against their pensions.